**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CASE NO. 21-CR-709 (TSC)** |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ROBERT M. CAO,** | : | |
| | : | |
| **Defendant.** | : | |

<u>**STATEMENT OF OFFENSE IN SUPPORT OF GUILTY PLEA**</u>

*Summary of Plea Agreement*

Defendant ROBERT M. CAO ("CAO") agrees to admit guilt and enter a plea of guilty to Counts One through Five of the Indictment, each of which charges CAO with Unlawful Distribution of a Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

**I.     <u>Elements of the Offense</u>**

In order to prove a violation of 21 U.S.C. § 841(a)(1), the government must prove the following elements: That the defendant (1) distributed or dispensed a controlled substance; (2) did so knowingly or intentionally; and (3) knowingly and intentionally acted other than as authorized for a legitimate medical purpose in the usual course of professional practice.

**II.     <u>Statement of Facts</u>**

Pursuant to Federal Rule of Criminal Procedure 11, the United States of America and Defendant CAO, with the concurrence of his attorney Jonathan Meltz, agree that had this case gone to trial, the government would have proven the following facts, among others, beyond a reasonable doubt:

***Relevant Background***

1.      On or about May 31, 2021, first responders and law enforcement officers were dispatched to a Fairfax, Virginia residence in response to a 911 call for assistance regarding victim "V.C.," after his girlfriend found him cold and non-responsive.   V.C. was pronounced deceased under suspicious circumstances.   Law enforcement interviewed V.C.'s girlfriend, who reported that V.C. had returned to the residence seemingly intoxicated the prior evening, and took Percocet prior to going to bed at approximately 5:30 a.m.

2.      On the nightstand next to where V.C. was found deceased were multiple prescription bottles, including one containing 10.5 of 30 Percocet pills filled on May 23, 2021. Defendant Robert M. CAO was the prescribing doctor listed on the Percocet bottle.   A subsequent autopsy report documented the cause of death as acute combined oxycodone and ethanol poisoning.   V.C.'s toxicology screen was also positive for oxycodone, oxymorphone, and ethanol.[1]

3.      Messages obtained from V.C.'s phone revealed several texts exchanged between V.C. and CAO from approximately December 27, 2020, through May 30, 2021.   The texts included discussions about CAO prescribing narcotic pain medications to V.C. that were filled at pharmacies in the District of Columbia and elsewhere during the months prior to V.C.'s death, including on May 23, 2021 and May 30, 2021.   The messages also showed a relationship between CAO and V.C. regarding kickbacks of narcotic pain pills.   Thereafter, the FBI opened an investigation into CAO after being contacted by the Fairfax County Police Department in connection with V.C.'s death.

---

[1] Percocet is a brand name of the narcotic analgesic oxycodone/acetaminophen, regulated by the DEA under the Controlled Substance Act as a Schedule II narcotic.

*Defendant CAO and his Unlawful Distribution of Controlled Substances to V.C.*

4.      During the relevant period, CAO was a licensed physician who held a Drug Enforcement Administration registration number and was licensed to practice medicine in the District of Columbia and the Commonwealth of Virginia. Accordingly, CAO was authorized to prescribe and dispense controlled substances, including Schedule II substances, to patients only for legitimate medical purposes and in the usual course of his professional practice. As part of his continuing medical education requirements, CAO also completed various trainings related to the prescribing of opioids, including "SCOPE of Pain: Safe and Competent Opioid Prescribing Education."

5.      On at least five occasions in 2021, in the District of Columbia and elsewhere, CAO knowingly and intentionally acted outside the usual course of his professional practice and without a legitimate medical purpose when he distributed and dispensed controlled substances to victim V.C. Specifically, during this period, CAO prescribed to V.C. at least 138 pills (102 Percocet pills and 36 Norco pills)2 containing Schedule II controlled substances as follows:

| Count | Approximate Fill Date | Controlled Substance Prescribed |
|-------|----------------------|--------------------------------|
| 1 | January 10, 2021 | 21 tablets of Percocet 10mg/325mg (Oxycodone) |
| 2 | January 17, 2021 | 36 tablets of Norco 7.5mg/325mg (Hydrocodone) |
| 3 | March 21, 2021 | 21 tablets of Percocet 10mg/325mg (Oxycodone) |
| 4 | May 23, 2021 | 30 tablets of Percocet 10mg/325mg (Oxycodone) |
| 5 | May 30, 2021 | 30 tablets of Percocet 10mg/325mg (Oxycodone) |

2 Norco is a brand name of the narcotic analgesic hydrocodone/acetaminophen regulated by the DEA under the Controlled Substance Act as a Schedule II narcotic.

6.     Each of the above-detailed prescriptions were handwritten and signed by CAO on a pad he took from a District of Columbia cosmetic medical office ("Medical Center 1") where he previously worked.   CAO stopped working for Medical Center 1 in March of 2020, and accordingly, had not worked there at any time during 2021.   A review of records from Medical Center 1 confirmed that V.C. had never been a patient at the business, and that the business had no records pertaining to V.C.   During a lawfully executed search warrant of CAO's residence, law enforcement found the prescription pad from Medical Center 1, with several sheets missing, hidden inside a hollowed-out container made to look like a diary.

7.     CAO knowingly and intentionally issued each of these prescriptions outside the usual course of his professional practice.   That is, he provided the Schedule II narcotic prescriptions to V.C. without having any doctor-patient relationship and without any physical examination, diagnosis, or treatment plan.   Moreover, CAO knew that during the relevant period, V.C. did not have any medical condition that would necessitate the prescribing of Schedule II narcotics during the relevant period in 2021.   Rather, CAO knowingly issued the prescriptions as part of a kickback plan that he proposed to V.C.    Specifically, CAO wrote V.C. numerous prescriptions for Schedule II controlled substances, in exchange for receiving a portion of the pills obtained via the prescriptions.   As the messages exchanged between CAO and V.C. revealed, on multiple occasions, CAO initiated the unlawful distribution.   For example, on December 27, 2020, CAO sent a text to V.C. stating, in part "Hey [V.C.]. Wanted to see if you still "need" meds lol," to which V.C. responded "Haha yeah man! I Def need some good meds."   Likewise, on January 8, 2021, CAO sent a text to V.C. stating "Let me know if you want the script from me for Sunday :)" On January 17, 2021, CAO sent another text to V.C. stating, in relevant part, "Let me know if you're able to get the norco's."

8.      Additional details of the unlawful prescriptions were also memorialized in messages exchanged between CAO and V.C.  For example, on December 27, 2020, CAO texted V.C. suggesting, "I know you're a percs fan. I'm a norcos fan myself. We can do 50/50 each or you can keep all the percs and I can keep all the norcos," to which V.C. responded, "Hell yes…I'm totally down."  CAO then responded "Cool.  We'll start by doing a script one Sunday and a script another Sunday and just go from there :)"  Likewise, on January 10, 2021, V.C. texted CAO to let him know he "[g]ot the percs…No questions asked :)" to which CAO responded, "Fuck yeah!!!"  After that, V.C. texted, "I'll try for your pills next week and keep you posted," and CAO replied "Sounds good brother! Happy for today's success."  Thereafter, on January 17, 2021, V.C. texted CAO to let him know that he had gotten prescription pills from a Target Pharmacy.  CAO and V.C. met up later that day in the parking lot of V.C.'s residence so V.C. could give CAO some of the narcotic medications, per their kickback arrangement.

9.      Likewise, on May 23, 2021, V.C. texted CAO, "Yo I just got the script from safwway [*sic*] on gtown! Thanks for the hookup," to which CAO asked if it went smoothly.  V.C. explained that he got the pills with "no questions asked," to which CAO replied, "Good! Let me know when you can get the next script."  V.C. then reminded CAO that "[b]oth scripts are for percs . . . Did you want me to grab that one for u?", to which CAO replied, "Yea sir!"  One week later, on May 30, 2021, after visiting five different pharmacies in the District of Columbia, V.C. obtained additional Percocet pills using another prescription CAO wrote for V.C.  That same evening – just hours before V.C. died – CAO and V.C. messaged back and forth about where to meet to hand over CAO's portion of the Percocet that he had prescribed to V.C.  Ultimately, CAO suggested that the two meet up at CAO's apartment complex to exchange the pain medications.

Thereafter, the two met in the parking lot CAO's apartment complex just after 8:00 p.m. on May 30, 2021, during which time V.C. provided CAO with his portion of the prescription drugs.

10.      During the relevant period, CAO took steps to avoid detection from law enforcement and regulatory authorities.  For example, CAO purposely used paper rather than electronic prescriptions because he knew that many pharmacy applications have audit trail functions for electronic prescriptions, whereas paper prescriptions are typically verified by a call from the pharmacy to the listed prescriber's office.  In a December 27, 2020, text to V.C., CAO explained, "I have paper scripts from [Medical Center 1] but Virginia only takes electronic scripts now.  I can write you a script but you'd have to get it filled in DC.  I have to stay under a limit just to be safe.  [Medical Center 1] closes on Sundays and Mondays so those are the best days to get them filled.  If for some reason they say that they have to call the office, just take the script back."  By purposely directing V.C. to attempt to fill prescriptions on days when he knew Medical Center 1 to be closed, CAO knew that this reduced the risk of the pharmacy calling Medical Center 1 about the pain pill prescriptions CAO wrote for V.C.  Similarly, CAO tried to lower his risk of getting caught by instructing V.C. to "take the script back" from the pharmacist if the pharmacy did attempt to contact Medical Center 1, so as not to create a paper trail.

11.      Finally, after learning of V.C.'s untimely death, CAO created fraudulent backdated medical records for V.C. to make it appear that CAO had provided legitimate prescriptions to V.C. as part of a lawful doctor-patient relationship.  Likewise, upon learning of V.C.'s death, CAO also told an individual that he was going to create notes for the prescriptions he had previously written for V.C.  Thereafter, CAO typed up fraudulent patient notes for V.C., with varying purported diagnoses and dates of alleged treatment, many of which did not correspond to the dates CAO had written on the paper prescriptions given to V.C.  CAO also texted photographs of the fraudulent

backdated notes to another individual – also a medical doctor - who had questioned CAO about why he had written V.C. the prescriptions.

12.     All of CAO's actions in furtherance of the offenses charged in this case and his relevant conduct, including the acts described above, were done willfully, knowingly, with the specific intent to violate the law, and not because of accident, mistake, or innocent reason.

13.     The above-detailed information is supported by, amongst other things, cell phone subscriber messages, text messages, prescription records, prescription monitoring data, witness interviews, medical records, bank records, phone records, business records, medical licensing records, physical evidence, police reports, and medical examiner reports.

*[Intentionally Left Blank]*

### III.   <u>Limited Nature of Proffer</u>

The information contained in the proffer is not a complete recitation of all the facts and circumstances, but the parties agree it is sufficient to prove beyond a reasonable doubt Unlawful Distribution of a Controlled Substance, in violation of 21 U.S.C. § 841(a)(1), as charged in Counts One through Five of the Indictment.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
FOR THE DISTRICT OF COLUMBIA

By: _____

ANNE P. MCNAMARA
Assistant United States Attorney
D.C. Bar Number 1006550
601 D Street, N.W.
Washington, D.C. 20530
(202) 809-3502
Anne.McNamara2@usdoj.gov

By: _____

CHRISTINE M. MACEY
Assistant United States Attorney
D.C. Bar Number 1010730
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-7058
Christine.Macey@usdoj.gov

DATED: November 2, 2022

## DEFENDANT'S ACKNOWLEDGMENT

The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for my guilty plea to the charges against me. It does not include all the facts known to me regarding this offense. I have read every word of this Statement of Offense and have carefully reviewed every part of it with my attorney, Jonathan Meltz, Esq. Pursuant to Federal Rule of Criminal Procedure 11, I fully understand the Statement of Offense and agree and stipulate to it knowingly, voluntarily and without reservation, intending to be legally. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of Offense fully. I am pleading guilty because I am in fact guilty of the offense identified above. I reaffirm that absolutely no other promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth above. I am fully satisfied with the legal services provided by my attorney in connection with this Statement of Offense and all matters related to it.

Date: __10/17/22__

Robert M. Cao
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have reviewed every part of this Statement of Offense with my client, Robert M. Cao, and fully discussed the provisions of it with my client. It accurately and completely set forth the Statement of Offense agreed to by the parties.

Date: __10/17/22__

Jonathan Meltz
Counsel for Defendant Robert M. Cao